IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| JAB ENERGY SOLUTIONS II, LLC, | : | Bankr. No. 21-11226 (CTG) |
| | : | |
| Debtor. | : | |

---

| | | |
|---|---|---|
| H. KENNETH LEFOLDT, JR., in his capacity as Liquidating Trustee of the JAB Energy Solutions II, LLC Liquidating Trust, | : : : | Civ. No. 23-1083-CFC |
| | : | |
| Appellant, | : | |
| v. | : | |
| | : | |
| ALLISON MARINE HOLDINGS, LLC, | : | |
| | : | |
| Appellee. | : | |

---

| | | |
|---|---|---|
| ALLISON MARINE HOLDINGS, LLC, | : : | |
| | : | |
| Appellant, | : | Civ. No. 23-1085-CFC |
| v. | : | |
| | : | |
| H. KENNETH LEFOLDT, JR., in his capacity as Liquidating Trustee of the JAB Energy Solutions II, LLC Liquidating Trust, | : : : | |
| | : | |
| Appellee. | : | |

---

Michael J. Joyce, JOYCE, LLC, Wilmington, Delaware; Alicia M. Bendana, Jennifer E. Berriere, Coleman L. Torrans, LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD, New Orleans, Louisiana

*Counsel for the Trustee.*

Eric M. Sutty, ARMSTRONG TISDALE, LLP, Wilmington, Delaware; Miles C. Thomas, MILES THOMAS LAW, LLC, New Orleans, Louisiana

*Counsel for Allison Marine Holdings, LLC.*

## **OPINION**

September 30, 2024
Wilmington, Delaware

COLM F. CONNOLLY
CHIEF JUDGE

This dispute arises in the Chapter 11 case of JAB Energy Solutions II, LLC ("Debtor" or "JAB") in connection with its confirmed plan of liquidation. The plan established a liquidating trust (the "Trust") authorized to pursue certain causes of action against the Debtor's former insiders. The Trust filed such a lawsuit on September 6, 2023, in the United States District Court for the Southern District of Texas.[1] The parties disputed the scope of the authority the plan granted the Trust to bring such litigation. Kenneth Lefoldt, Jr. (the "Trustee"), in his capacity as trustee of the Trust, filed a motion with the Bankruptcy Court seeking interpretation of the plan. The Debtor's former parent corporation, appellee Allison Marine Holdings, LLC ("AMH") objected the motion on the grounds that it was procedurally flawed and the Trust's interpretation was unsupported.

On September 13, 2023, the Bankruptcy Court held a hearing on the Trustee's Motion. B.D.I. 518 ("9/13/23 Tr."). The Bankruptcy Court's interpretation of the plan is set forth in its September 18, 2023 letter ruling (B.D.I. 505)[2] (the "Letter Ruling") and accompanying order (B.D.I. 506) (the "Order"). The Bankruptcy Court agreed with the Trustee's reading of the Plan as it related to certain claims,

---

[1] *See Lefoldt v. Boudreaux, et al.,* S.D. Tex. No. 23-3331.
[2] The docket of the chapter 11 case, captioned *In re JAB Energy Solutions II, LLC,* No. 21-11226 (CTG) (Bankr. D. Del.) is cited herein as "B.D.I. __." The

but not as to others.  Both parties have appealed the Order.  Each party's appeal is limited to a separate portion of the Order.  The Trustee's appeal is limited to the Order's determination at ¶ 2(b) that "The Trust is not authorized to assert a claim against [AMH]."  Civ. No. 23-1083-CFC, D.I. 1.  AMH's Notice of Appeal states that it is "expressly limited" to the Order's determination at ¶ 2(a) that "[t]he Trust may assert claims for amounts in excess of those that may be covered by insurance but is required to distribute that portion of any recovery that exceeds available insurance to the holders of Class 3 claims."  Civ. No. 23-1085-CFC, D.I. 1.  AMH, however, has also challenged procedural aspects of the Bankruptcy Court's decision.

For the reasons that follow, I find no merit in the procedural issues raised, and I am persuaded by the Trustee on the two substantive issues.  Accordingly, I will affirm the Order with respect to ¶ 2(a), and reverse the Order with respect to ¶ 2(b).

## I.    BACKGROUND

### A.    The Debtor and the Chapter 11 Cases

JAB Energy Solutions, LLC ("JAB I") was founded in 2008 to provide "solutions for the decommissioning, removal, abandonment, construction and installation of offshore oil and gas facilities, platforms and pipelines" to "major and independent energy companies worldwide."  B.D.I. 24 at ¶¶ 3-4.  On June 27, 2011, JAB I's business and operations were transferred to JAB (i.e., the Debtor), a Delaware limited liability company, as part of a merger into a family of companies operating under "Allison Marine."

2

JAB is 100% wholly owned by AMH.  AMH also owns five affiliated companies (together, the "Affiliates").  *Id.* ¶ 17.  AMH is the sole member of JAB, and at all relevant times, it was JAB's sole manager.  As of the bankruptcy filing, the following individuals held positions as officers of JAB: Stephen Orlando, Chairman; Brent Boudreaux, President; Sonda Robertson, Chief Financial Officer; George Henry, Vice President; Alan Vando, Vice President.  B.D.I. 55 at 8.

On September 7, 2021, JAB filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  According to its bankruptcy schedules, when JAB filed for bankruptcy, its assets were valued at $19,138,897.48, which value primarily consisted of $17,669,163.36 in uncollected receivables to JAB.  The majority of the uncollected receivables ($11,993,040.11) owed to JAB was owed by its manager, AMH ($11,917,214.95).  B.D.I. 54.  The Debtor's scheduled liabilities amounted to $37,006,852.89, inclusive of $17,013,700.92 in unsecured claims and secured claims due to JAB's lenders, Castlegate Credit Opportunities Fund LLC ("Castlegate") in the amount of $13,942,207.56 and Garmark SBIC Fund II LP ("Garmark") in the amount of $3,071,493.36.  *Id.*

On November 8, 2022, the Bankruptcy Court confirmed (B.D.I. 382) ("Confirmation Order") the Debtor's Plan of Liquidation (B.D.I. 312) (the "Plan").  The Plan established the Trust and authorized the appointment of the Trustee who was charged with, *inter alia*, "investigating and pursuing any Causes of Action the

3

Debtor holds or may hold against any Entity that constitute Liquidating Trust Assets." Plan § 14.5.

The Liquidating Trust Assets include the Assigned Liquidating Trust Claims (Plan § 3.85) which in turn include the D&O Insurance Assigned Claims (Plan § 3.6). The D&O Insurance Assigned Claims are defined to include:

> [a]ny and all claims and causes of action belonging to the Debtor or the Estate, *only to the extent such claims and causes of action are covered under any applicable policy of insurance* belonging to the Debtor or the Estate, against Brent Boudreaux *and any other person qualifying as an "Insured Person"* under that certain Management Liability [Policy][3]...

Plan § 3.37 (emphasis added). This language is central to both appeals.

## B.   The Motion and Letter Ruling

On August 27, 2023, the Trust filed its Motion Seeking Interpretation of the Plan of Liquidation (B.D.I. 490) ("Motion"). As framed by the Bankruptcy Court, the Motion asked two questions: (1) whether the claims that the Trust is asserting in the Southern District of Texas are claims "covered under any applicable policy of insurance belonging to the Debtor or the Estate," and (2) whether AMH fits within the language describing who may be sued – "Brent Boudreaux and any other person qualifying as an 'Insured Person' under that certain Management Liability [Policy]." Letter Ruling at 5.

---

[3] B.D.I. 501-2 (Management Liability Solutions 2.0 Insurance Policy, Policy No. DPLE320442, Policy Form Number D56100-G) (the "Policy").

4

With respect to the first question, the Trust sought confirmation that it was not limited to pursuing only that portion of the claims against directors and officers that might be covered by insurance, but that it may recover the entire claim, keeping for the beneficiaries of the Trust only that portion that is covered by insurance, and remitting to the holders of Class 3 claims against the estate the portion that is not covered by insurance.[4]  In its opposition (B.D.I. 501), AMH argued that the language of § 3.37 of the Plan—which limits the assignment "only to the extent such claims and causes of action are covered" by an insurance policy—means that the Trust only gets the portion that is covered by insurance and cannot assert a claim for anything more.   The Bankruptcy Court held that AMH's interpretation not only "runs into a host of practical problems" but would also render § 10.3(b) of the Plan—which required the Trustee "to sue to recover . . . amounts beyond the limits

---

[4] The Debtor's interest in the D&O causes of action were assigned to the Trust, with the proceeds derived therefrom to be split between (1) the unsecured creditors, who are to receive all proceeds recoverable and paid from the Management Liability Insurance Policy, and (2) the Debtor's "Pre-Petition Junior Lender," Castlegate, which is to receive the "Distributable D&O Non-Insurance Proceeds" or "D&O Excess Claims," *i.e.* any net proceeds derived from the Trustee's pursuit of D&O causes of action other than proceeds recoverable and paid from any insurance policies.  Plan § 10.5; B.D.I. 490-3 ("Liquidating Trust Agreement") ¶¶ 4.01; 4.09. Section 10.3(b) of the plan, which describes the treatment afforded to the holders of Class 3 claims – claims held by the debtor's prepetition junior lenders—states that "the Holder of the Prepetition Junior Lender Claims shall be entitled to any Class 3—Distributable D&O Non-Insurance Proceeds as soon as reasonably practicable after the receipt thereof by the Liquidating Trust."  Plan § 10.3(b).

of coverage and turn them over to the Class 3 creditors"—into a "false statement."
Letter Ruling at 6.

With respect to the second question, AMH argued that it is not an "Insured Person" under the policy at issue, and as such, the Plan did not authorize the Trust to assert a claim against it.  The Policy defines Insured Persons as "all Executives and all Employees."  B.D.I. 501-2, Coverage Part A at 2 (§ II.G).  Executives are defined as "all persons who were, now are, or shall be directors, officers, management committee members, advisory committee members, members of the Board of Managers or natural person general partners of the Company."  *Id*. § II.D. The Bankruptcy Court agreed with AMH.  "While it is undisputed that AMH was the sole manager of JAB, that does not mean that it was either a 'management committee member' or a member of the 'Board of Managers.'"  Letter Ruling at 7. "Moreover, again as a matter of ordinary English, it would seem surprising if a corporate entity would fit within the definition of 'Executive,' which term certainly brings to mind a natural person rather than a corporation."  *Id*.

### C.    The Order

On September 18, 2023, the Bankruptcy Court issued its Order granting the Motion in part, and denying the Motion in part.  The Order provides that: (1) the Trust may assert claims for amounts in excess of those that may be covered by insurance but is required to distribute that portion of any recovery that exceeds

available insurance to the holders of Class 3 claims (¶ 2(a)); and (2) the Trust is not authorized to assert a claim against AMH (¶ 2(b)).

### D.      The Appeals

On September 29, 2023, the Trustee filed his timely Notice of Appeal.  Civ. No. 23-1083-CFC, D.I. 1.  The Trustee's appeal is fully briefed.  *Id.*, D.I. 12, 15, 17. On October 2, 2023, AMH filed its timely Notice of Appeal.  Civ. No. 23-1085-CFC, D.I. 1.  AMH's appeal is also fully briefed.  *Id.*, D.I. 10, 12, 14.  Neither party requested oral argument.

## II.      JURISDICTION AND STANDARD OF REVIEW

Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158.  District courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees."  28 U.S.C. § 158(a)(1).  The Bankruptcy Court's Order, which enforces the confirmed Plan, and "dispose[s] of [a] discrete dispute[] within the larger case," is also final and appealable.  *In re Energy Future Holdings Corp.*, 904 F.3d 298, 308 (3d Cir. 2018) (quoting *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 657 n.3 (2006)).

A district court "review[s] the Bankruptcy Court['s] legal determinations de novo, its factual findings for clear error, and its exercise of discretion for abuse thereof."  *In re Spansion Inc.*, 2011 WL 3268084, at *4 (D. Del. July 28, 2011), *aff'd sub nom. In re Spansion, Inc.*, 507 F. App'x 125 (3d Cir. 2012) (quoting *In re O'Brien, Envtl. Energy, Inc.*, 188 F.3d 116, 122 (3d Cir. 1999)).

7

"When a bankruptcy court has analyzed one of its own orders, 'an appellate court must distinguish between the review of a bankruptcy court's application of legal principles and the review of a bankruptcy court's actual interpretation of an ambiguous provision in its own order.'" *In re LTC Holdings, Inc.*, 10 F.4th 177, 184 (3d Cir. 2021) (quoting *In re Shenango Grp. Inc.*, 501 F.3d 338, 346 (3d Cir. 2007)). "The application of legal principles to an unambiguous provision is reviewed de novo, whereas the interpretation of an ambiguous provision is reviewed for abuse of discretion." *Id.* "The initial determination of whether a provision is ambiguous is reviewed de novo." *Id.*

## III.   DISCUSSION

### A.   AMH's Substantive Challenge

AMH challenges the Order's determination that "[t]he Trust may assert claims for amounts in excess of those that may be covered by insurance but is required to distribute that portion of any recovery that exceeds available insurance to the holders of Class 3 claims." Order ¶ 2(a).

The parties are bound by the Plan, 11 U.S.C. § 1141(a), which acts as a binding contract on the parties. *In re USN Commc'ns, Inc.*, 280 B.R. 573, 592 (Bankr. D. Del. 2002). In deciding the meaning of the Plan, the Bankruptcy Court was obligated to apply principles of contract interpretation. *In re SS Body Armor I, Inc.*, 2021 WL 2315177, at *5 (Bankr. D. Del. June 7, 2021). The Plan "shall be

8

governed by, and construed and enforced in accordance with, the laws of the State of Delaware," so Delaware's rules of interpretation apply.  Plan § 19.19.

In accordance with Delaware law, "when interpreting a contract, the Court will give priority to the parties' intentions as reflected in the four corners of the agreement." *GMG Cap. Invs., LLC v. Athenian Venture Partners I, L.P.,* 36 A.3d 776, 779 (Del. 2012).  The Court will interpret clear and unambiguous terms according to their ordinary meaning. *Id.* at 780.  "A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction.  "Rather, an ambiguity exists when the provisions in controversy are fairly susceptible of different interpretations or may have two or more different meanings." *Id.* (internal citations and quotations omitted).

Delaware also applies the canon against surplusage. *Kuhn Const., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396-97 (Del. 2010) ("We will read a contract as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage.").  The canon against surplusage may be helpful to resolving competing interpretations of a plan. *See Bank of New York Mellon v. Commerzbank Cap. Funding Tr. II,* 65 A.3d 539, 549 n.30 (Del. 2013) (citing *Begay v. U.S.*, 553 U.S. 137, 153 (2008) (Scalia, J., concurring)).

The Plan assigned "Liquidating Trust Assets" (§ 3.85) to the Trustee, which include the Assigned Liquidating Trust Claims (*id.*) which include the "D&O Insurance Assigned Claims," which are further defined as:

> Any and all claims and causes of action belonging to the Debtor or the Estate, *only to the extent such claims and causes of action are covered under any applicable policy of insurance belonging to the Debtor or the Estate* …

§ 3.37 (emphasis added). The Bankruptcy Court accepted the Trustee's argument that this provision assigned any and all "claims and causes of action" that were subject to coverage from any policy of insurance for which the Debtor was a named insured. In other words, the "only to the extent" language simply limited the assignment to claims and causes of action that the Trustee could point to as being included in an applicable insurance policy's coverage provisions. For example, the D&O Policy, in its COVERAGE PART A, provides coverage for a claim asserted against an "Insured Person" for any "Wrongful Act," which the D&O Policy defines as "any actual or alleged act, omission, error, misstatement, neglect, breach of duty by any Insured Persons in their capacity as such." Policy at 4, § 2.O. Accordingly, it is undisputed that Trustee was assigned the Debtor's breach of duty claims against "Insured Persons." However, if the Trustee desired to assert a claim that does not arise out of a "Wrongful Act" as defined above, then the Trustee would have to point to another applicable coverage provision to show standing.

10

According to AMH, this ruling constitutes reversible error.  AMH argues that the "to the extent" language did not merely dictate which claims were assigned to the Trust, it also capped the Trustee's ability to recover monetary damages from those claims assigned to the Trust.  Civ. No. 23-1085-CFC, D.I. 10 ("AMH Brief") at 6-7, 31-35.  "[T]he only D&O Claims that were assigned to and became Liquidating Trust Assets were claims and causes of action covered by insurance and the proceeds recoverable from insurance."  *Id.* at 11.  As summarized by the Bankruptcy Court, AMH's position is that Section 3.37 functions such that "the Trust only gets the portion that is covered by insurance and cannot assert a claim for anything more."  Letter Ruling at 6.  AMH further asserts that because "[t]he Bankruptcy Court found the language of the Plan to be ambiguous," under the Delaware parol evidence rule, "extrinsic evidence should have been admissible to determine intent."  AMH Brief at 15.

The Bankruptcy Court did not find either party's interpretation of § 3.37 to be unreasonable when read in "isolation."  Letter Ruling at 6.  Contrary to AMH's argument, however, the Bankruptcy Court did not find the Plan to be ambiguous. AMH Brief at 15.  A plan provision is only ambiguous if it is subject to multiple reasonable interpretations after consideration of the plan as a complete contract.  *SS Body Armor*, 2021 WL 2315177, at *5.  As the Bankruptcy Court explained, "text cannot be read without context."  Letter Ruling at 6.

I agree that the Plan is not ambiguous. Construed as a whole, the disputed provision is not subject to more than one reasonable interpretation. The Plan determines the treatment of creditors' claims. In § 10.3 of the Plan, describing the treatment of Class 3 Creditors, the Plan allows certain claims of the Prepetition Junior Lender, Castlegate, and grants Castlegate entitlement to "any Class 3 - Distributable D&O Non-Insurance Proceeds as soon as reasonably practicable *after the receipt thereof by the Liquidating Trust*." Plan § 10.3 (emphasis added). In Section 3.28, the Plan defines "Class 3 - Distributable D&O Non-Insurance Proceeds" to mean "any and all net proceeds *derived by the Liquidating Trust* from the Liquidating Trust's pursuit of D&O Insurance Assigned Claims [§ 3.37], other than proceeds recoverable and paid from any Insurance Policies." Plan § 3.28 (emphasis added).

Upon *de novo* review of these unambiguous provisions, the Bankruptcy Court correctly concluded that the "context provided by 10.3(b) is decisive." Letter Ruling at 6. Given that §§ 10.3 and 3.38 of the Plan explicitly mandate the Trustee to distribute net proceeds of the D&O Insurance Assigned Claims not derived from an insurance policy to the Debtor's Prepetition Junior Lender, Castlegate (the "Class 3 Creditor"), § 3.37 of the Plan cannot reasonably be read to preclude the Trustee's ability to recover damages above and beyond the limits of liability set forth in the D&O Policy. *See Osborne ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del.

12

2010) ("We will not read a contract to render a provision or term meaningless or illusory."); *Weinberg v. Waystar, Inc.*, 294 A.3d 1039, 1044 (Del. 2023) (same).

As the Bankruptcy Court observed, AMH offers no explanation as to why its proposed interpretation of the Plan would not render meaningless § 10.3:

> AMH candidly acknowledged that it had absolutely no explanation for what work, on its construction of § 3.37, §10.3(b) was doing. The truth of it is that AMH's reading is worse than just rendering § 10.3(b) surplusage, AMH's reading turns this provision of § 10.3(b) into a false statement. In light of that glaring difficulty with AMH's reading, the Court is persuaded that the Trust's reading of § 3.37 is the more plausible one.

Letter Ruling at 6. The Bankruptcy Court also observed that AMH's interpretation "runs into a host of practical problems." *Id.* "Unless and until any disputes regarding insurance coverage are resolved, how is the Trust supposed to proceed in district court? A cause of action either is or is not asserted against a defendant in a lawsuit. What does it mean to assert a claim 'to the extent' of available insurance?" *Id.* In response, AMH simply states that the Bankruptcy Court's ruling on this issue "was reversible error" without any further analysis or support. AMH Brief at 34.

The Bankruptcy Court properly concluded that AMH's interpretation falters in the larger context of the Plan because it violates the canon against surplusage, renders other language in the Plan and its supporting documents "false," and is not practicable. The Bankruptcy Court properly held that the Plan assigns the Debtor's claims and causes of action covered under the D&O Policy (or any policy) to the

Liquidating Trust without limitation on the recoverable damages. Accordingly, I will affirm ¶ 2(a) of the Order.

## B. The Trustee's Substantive Challenge

The Trustee challenges the Order's determination that "The Trust is not authorized to assert a claim against [AMH]." Order ¶ 2(b). The Bankruptcy Court accepted AMH's argument that AMH is not an "Insured Person" under the policy at issue, and as such, that the Plan did not authorize the Trust to assert a claim against it. In reaching this conclusion, the Bankruptcy Court explained:

> The policy defines an insured person as "all Executives and all Employees." Further, Executives are defined as "all persons who were, now are, or shall be directors, officers, management committee members, advisory committee members, members of the Board of Managers or natural person general partners of the Company."
>
> While it is undisputed that AMH was the sole manager of JAB, that does not mean that it was either a "management committee member" or a member of the "Board of Managers." Moreover, again as a matter of ordinary English, it would seem surprising if a corporate entity would fit within the definition of "Executive," which term certainly brings to mind a natural person rather than a corporation.

Letter Ruling at 7. I agree with the Trustee, however, that the Bankruptcy Court erred in concluding that AMH is not a member of the Board of Managers under the Policy.

14

As noted above, under § 3.37 of the Plan, the Trust was assigned, and the Trustee was granted standing to pursue, all "D&O Insurance Assigned Claims," which the Plan defines to include

> any and all claims and causes of action belonging to the Debtor or the Estate, only to the extent such claims and causes of action are covered under any applicable policy of insurance belonging to the Debtor or the Estate, against Brent Boudreaux *and any other person qualifying as an "Insured Person" under that certain Management Liability [Policy].*

Plan § 3.37 (emphasis added).  Under the Policy, "Insured Person shall have the meaning as such terms are defined in each Coverage Part and shall also include any entities or persons as provided by endorsement to this Policy."  Policy, General Terms and Conditions at 2 (§ II.G).  In the Policy's Coverage Part A, "Insured Persons" is defined to "mean: (1) all Executives; and (2) all Employees."  Policy, Coverage Part A at 2.  Also under Coverage Part A, "Executives shall mean all persons who were, now are, or shall be directors, officers, management committee members, advisory committee members, *members of the Board of Managers* or natural person general partners of [JBA]."  *Id.* § II.D (emphasis added).

Although capitalized in the Policy, "the Board of Managers" is not a defined term in the Policy.  "Under well-settled case law, Delaware courts look to dictionaries for assistance in determining the plain meaning of terms which are not defined in a contract."  *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728,

738 (Del. 2006). Black's Law Dictionary (*Black's*) entry for "board of managers" reads: "*See* BOARD OF DIRECTORS." BOARD OF DIRECTORS, *Black's Law Dictionary* (12th ed. 2024). *Black's* defines "Board of Directors" as:

> The governing body of a corporation, partnership, association, or other organization, elected by the shareholders or members to establish policy, elect or appoint officers and committees, and make other governing decisions. — Often shortened (informally) to board. — Also termed board of governors; board of managers; board of trustees (esp. in charitable and educational organizations); executive board.

*Id.* BOARD OF DIRECTORS. *Black's* defines "manager" as "[s]omeone who administers or supervises the affairs of a business, office, or other organization." *Id.* MANAGER.

Here, it is undisputed that JAB is a Delaware limited liability company and that AMH was JAB's sole member and manager. Accordingly, AMH meets the definition of "Executives" under the Plan and Policy.

To the extent the Bankruptcy Court determined that AMH could not be an Executive because it is not a natural person, that determination conflicts with the language of the Policy. Under the Policy, six types of "persons" qualify as an Executive: "directors, officers, management committee members, advisory committee members, members of the Board of Managers or *natural person* general partners of [JBA]." Policy, General Terms and Conditions at 2 (§ II.D) (emphasis added). "[A]s a matter of ordinary English," the term "natural person" modifies

16

only one of these six categories—general partners. It follows as a matter of logic and grammar that the other five types of Executives need not be natural persons. If the intent were for all types of executives to be limited to natural persons, the modifying adjective phrase would need to appear at the beginning of the list. *See Catlin Specialty Ins. Co. v. CBL & Assocs. Properties, Inc.*, 2017 WL 4173511, at *7 (Del. Super. Ct. Sept. 20, 2017), *superseded*, 2017 WL 4784432 (Del. Super. Ct. Oct. 17, 2017). Accordingly, AMH, in its capacity as JAB's manager, is a "member of the Board of Managers" under the Policy. And reviewing the Bankruptcy Court's construction *de novo*, I am persuaded that that managers' wrongful acts are covered under the Policy as Executives, and, therefore, AMH is an Executive and Insured Person. Accordingly, I will reverse the Order's determination that "[t]he Trust is not authorized to assert a claim against [AMH]." Order ¶ 2(b).

## C.     AMH's Procedural Challenges

### 1.     Federal Rule of Bankruptcy Procedure 7001

AMH also challenged the Motion below as procedurally defective. The Bankruptcy Court found that, "[e]ven if the Rules formally required an adversary proceeding, the error the Trust committed in bringing this proceeding by motion was a harmless one." Letter Ruling at 3. "Bankruptcy Rule 9005 incorporates Rule 61 of the Federal Rules of Civil Procedure, which states that the "court must disregard all errors that do not affect any party's substantial rights." *Id*. Accordingly, the

Bankruptcy Court did not reach the merits of whether an adversary proceeding was required under Bankruptcy Rule 7001.

AMH argues on appeal that the Bankruptcy Court erred "by not denying the Motion as procedurally defective [because] . . . the relief sought ... can only be granted through an adversary proceeding." AMH Brief at 6-7. AMH bases its argument that Federal Rule of Bankruptcy Procedure 7001 requires an adversary proceeding on its assumption that the Trustee's motion sought to "determine the validity, priority, or extent of an interest in property." AMH Brief at 16. AMH's argument is misplaced, and I agree with the ultimate result reached by the Bankruptcy Court.

Bankruptcy Rule 7001 lists ten separate categories of proceedings specifically denominated as adversary proceedings, none of which are applicable here. Fed. R. Bankr. P. 7001. "Unless Rule 7001 specifically requires that the relief be sought by adversary proceeding, the bankruptcy court properly may dispose of the matter by motion." *In re Rodeo Canon Dev. Corp.*, 2010 WL 6259764, at *7 (B.A.P. 9th Cir. Oct. 28, 2010).

AMH relies on Bankruptcy Rule 7001(9), which provides that "a proceeding to obtain a declaratory judgment relating to any of the foregoing"—including a "proceeding to determine the validity, priority, or extent of a lien or other interest in property"—is an adversary proceeding. Fed. R. Bankr. P. 7001(2), (9). AMH

18

asserts that, in order for the Bankruptcy Court to reach its determination that "[t]he Trust may assert claims amounts in excess of those that may be covered by insurance," the Bankruptcy Court had to determine the validity, priority, or extent of an interest in property: "specifically, that claims beyond those covered by insurance are property of the Liquidating Trust." AMH Brief at 16.

The Trustee sought a declaratory judgment, but not one related to (1) a proceeding to recover property, (2) the determination of the validity or extent of a lien, or (3) obtaining an injunction. Rather, the Trustee sought interpretation and clarification of the Plan already confirmed by the Bankruptcy Court. In other words, the Trustee asked the Bankruptcy Court to clarify an order already in place. As Bankruptcy Rule 7001 does not specifically provide for this type of judgment, no adversary proceeding was required.

Indeed, as the Trustee correctly points out, bankruptcy courts frequently rule on motions to interpret or enforce confirmed plans/orders without requiring an adversary proceeding. *See, e.g., In re Applewood Chair Co.*, 203 F.3d 914, 918 (5th Cir. 2000) (motion for clarification was properly filed as a motion rather than an adversary proceeding when property of the estate was not in dispute); *In re Filene's Basement, LLC*, 621 B.R. 94, 97 (Bankr. D. Del. 2020); *see also In re WorldCorp, Inc.*, 252 B.R. 890, 895 (Bankr. D. Del. 2000) (adversary proceeding is not required when Debtors are merely seeking to enforce an order already in place); *In re Rodeo*

19

*Canon*, 2010 WL 6259764, at *7 (finding a request to the court to "interpret, clarify and/or modify its prior [] Order" is not the type of relief listed in Rule 7001, so it ordinarily may be sought by motion as a contested matter, without an adversary proceeding).

There is no dispute the D&O Assigned Claims are property of the Debtor's bankruptcy estate, and no determination of any such property right was required. The Bankruptcy Court's determination that the D&O Assigned Claims were estate property was contained in the Plan and Confirmation Order—not the appealed Order interpreting same. The Plan is binding on AMH and is not subject to re-litigation. Likewise, the Trustee's grant of standing was also determined in the Plan and, although it can be clarified, it cannot be relitigated. *In re Earned Capital Corp.*, 331 B.R. 208, 226 (W.D. Pa. 2005) ("A plan is binding upon all parties once it is confirmed and all questions that were raised or could have been raised pertaining to such plan are *res judicata*. ... The preclusive effect of a confirmed plan of reorganization is binding upon every entity that holds a claim or interest in the bankruptcy."). The issue presented was merely whether the Plan provides the Trustee with standing or authority to pursue claims that already belong to the estate. *In re WorldCorp, Inc.*, 252 B.R. at 895 ("While it is true as a general proposition that a claim to recover money or property or to obtain an injunction or other equitable relief must be brought as an adversary proceeding, that general rule is not

20

applicable to this case.  In this case, the Debtors are merely seeking to enforce an

order already in place.")  Bankruptcy Rule 7001(9) was not an impediment to

seeking Plan interpretation via motion.

AMH argues that the Bankruptcy Court failed to address its argument under

Bankruptcy Rule 7001(2).  But the Bankruptcy Court did not reach the merits.

AMH also challenges the Bankruptcy Court's observation that "a case can be made

that the declaratory relief sought by this motion, which seeks only a clarification of

what the plan already provides, is within the Rule 7001(7) exception to the

requirement of an adversary proceeding."  Letter Ruling at 3.  Bankruptcy Rule

7001(7) provides that a proceeding "to obtain an injunction *or other equitable*

*relief*" requires an adversary proceeding, "*except when a ... chapter 11 ... plan*

*provides for the relief.*"  Fed. R. Bankr. P. 7001(7) (emphasis added).  According to

AMH, "it appears that the Bankruptcy Court determined that a declaratory judgment

was a form of equitable relief and thus possibly triggered or came under Rule

7001(7)," even though a declaratory judgment described in Rule 7001(9) "is entirely

separate from an injunction or equitable relief set out in Rule 7001(7)."  AMH Brief

at 21.

Again, the Bankruptcy Court did not reach the merits, finding instead that any

failure to bring the request for relief by adversary proceeding was a harmless error.

Whether Bankruptcy Court viewed the Trustee's motion to be more properly framed

21

as a request for equitable relief where, as here, a chapter 11 plan provides for the

relief, is unclear. Regardless, it is *dicta*. In any event, the procedural issue was

raised in the Bankruptcy Court, and affirmance is warranted on any basis that finds

support in the record. *In re LMI Legacy Holdings, Inc.*, 625 B.R. 268, 289-90 (D.

Del. 2020) (citing *Geness v. Cox*, 902 F.3d 344, 356 (3d Cir. 2018)). AMH's

argument under Bankruptcy Rule 7001(2) fails.[5]

### 2.    Subject Matter Jurisdiction and Abstention

AMH argues that "the Bankruptcy Court made a determination of coverage

and interpreted a policy of insurance that is at issue in a separate parallel proceeding

in the district court for the Southern District of Texas, and determined the issue of

standing." AMH Brief at 29. In doing so, AMH argues, the Bankruptcy Court

improperly allowed the Trustee's Motion to Interpret the Plan to be used (1) as a

method of procedural fencing, (2) to obtain an impermissible advisory opinion,

(3) to waste judicial resources; and (4) to violate the principle of avoiding duplicate

litigation. *Id.* (citations and quotations omitted).

It is notable that AMH simultaneously (as Appellee) asks this Court to uphold

the Bankruptcy Court's interpretation of the Plan[6] and (as Appellant) attacks the

---

[5] Based on the foregoing, it is unnecessary to consider the arguments regarding "harmless error."

[6] Civ. No. 23-1083, D.I. 15 at 15 ("The Bankruptcy Court did not abuse its discretion in correctly holding that the Trust was not assigned any claim against AMH because AMH did not qualify as an "Insured Person" under the Policy.

Bankruptcy Court's decision to exercise its jurisdiction to interpret the Plan.[7]

Because AMH, without any apparent regard for its own inconsistency, has taken

whichever position is most favorable to it, the Trustee argues that I should decline to

consider AMH's procedural arguments against the Letter Ruling.

Assuming that I should consider these arguments, they fail.  In its opposition

to the Trustee's Motion, AMH argued that the Bankruptcy Court did not have

jurisdiction to hear the Trustee's Motion.  The Bankruptcy Court addressed and

dismissed that argument in its Letter Ruling, finding that it had core subject matter

jurisdiction to interpret and enforce the terms of the Plan:

> Because the confirmation order in this case expressly
> provides that the Court retained jurisdiction "to ensure that
> the purpose and intent of the Plan are carried out," this
> motion to enforce is properly understood as
> one to enforce that Confirmation order. ...
>
> AMH offers no response at all to this controlling authority
> holding that a bankruptcy court may enforce its prior
> order. The Court is thus satisfied that it has subject-matter
> jurisdiction to consider the Trustee's motion, which seeks
> to clarify and enforce section 3.37 of the
> confirmed plan.
> ...

---

Therefore, AMH requests that the Bankruptcy Court's Order holding that the Trust
is not authorized to assert a claim against AMH be affirmed.").
[7] Civ. No. 23-1085, D.I. 10 at 35-36 ("The Bankruptcy Court's Order holding ...
should be reversed or vacated because ... in making this determination, the
Bankruptcy Court improperly allowed the Motion to be used as a method of
procedural fencing or as a means to provide another forum in a race for res judicata,
or to obtain an impermissible advisory opinion...").

> This is … a motion that seeks a clarification of this
> Court's own prior order. As such, Third Circuit law makes
> plain that it is a core matter.

Letter Ruling at 2, 4. On appeal, AMH does not challenge that ruling and thus

concedes that the Bankruptcy Court had core subject matter jurisdiction to interpret

the Plan and confirmation order.

Abstention in bankruptcy cases is addressed in 28 U.S.C. § 1334(c). Because

this matter is a core proceeding,[8] AMH's appeal raises the sole question of whether

the Bankruptcy Court erred in failing to exercise its discretion to permissively

abstain from interpreting the grant of standing to the Trustee in the Plan and its own

confirmation order. The Third Circuit has identified twelve factors when

considering whether permissive abstention is appropriate. *In re Maxus Energy

Corp.*, 597 B.R. 235, 247 (Bankr. D. Del. 2019). Permissive abstention is not

formulaic and involves an equitable consideration of the circumstances and

weighing of the factors. *Id.* I agree with the Trustee that any consideration of those

factors would weigh against abstention.[9]

---

[8] For mandatory abstention under § 1334(c)(2) to apply, the party seeking abstention must establish several requirement, including "the matter before the court must be non-core." *LaRoche Industries, Inc. v. Orica Nitrogen LLC (In re LaRoche Industries, Inc.)*, 312 B.R. 249, 252-53 (Bankr. D. Del. 2004).

[9] *See* Civ. No. 23-1085, D.I. 12 at 23 n.57 (arguing (1) abstention would negatively impact the administration of the bankruptcy; (2) bankruptcy issues predominate over state issues; (3) there is no state law at issue which is difficult or unsettled; (4) although a related proceeding has been commenced in another court, the Bankruptcy Court is the best court to interpret its own order; (5) there is no other jurisdictional

Rather than argue the traditional abstention factors, AMH instead argues that the Bankruptcy Court's ruling on the Trustee's standing under the Plan was an improper exercise of discretion under the Declaratory Judgment Act ("DJA"), pursuant to the cases of *Terra Nova*, *Reifer*, *Care Corp.* and *Crowley*,[10] or as an improper advisory opinion, pursuant to the *Coffin* and *Cubic Energy* cases.[11]

Although the Bankruptcy Court found that the Trustee's Motion "in effect" sought a declaratory judgment with respect to the meaning of the confirmed plan, the Bankruptcy Court did not decide the issue under the DJA but rather considered the Motion "as one to enforce [its] Confirmation Order."  Letter Ruling at 2.  None of the cases cited by AMH involve bankruptcy courts interpreting their own orders confirming plans, and AMH does not make any attempt to argue any reasons as to

---

basis other than 28 U.S.C. §1334 for the Bankruptcy Court to interpret its own order; (6) this matter is closely related to the bankruptcy case; (7) the substance of the Motion was core; (8) the Plan's grant of standing to the Trustee does not concern the merits of the state law claims brought by the Trustee in the Southern District of Texas and therefore is effectively severed; (9) the Bankruptcy Court ruled on the Motion quickly and there are no remaining issues burdening its docket; (10) there is no risk of forum shopping when a court is asked to interpret and enforce its own order; (11) there is no right to a jury trial; and (12) although AMH is not the Debtor, it is the Debtor's sole member and manager, and it participated in the Plan).

[10] AMH Brief at 30 (citing *Terra Nova Ins. Co., Ltd. v. 900 Bar, Inc.*, 887 F.2d 1213, 1225 (3d Cir. 1989); *Care Corp. v. Kiddie Care Corp.*, 344 F. Supp. 12, 16, n. 2 (D. Del. 1972); *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 146 (3d Cir. 2014); *Crowley Cutlery Co. v. United States*, 849 F.2d 273, 279 (7th Cir. 1988)).

[11] AMH Brief at 30-31 (citing *Coffin v. Malvern Federal Sav. Bank*, 90 F.3d 851, 853-54 (3d Cir. 1996); *In re Cubic Energy, Inc.*, 587 B.R. 849, 855 (Bankr. D. Del. 2018)).

why those distinguishable cases would provide any authority for overruling the Bankruptcy Court's decision here to interpret its own prior order.

The *Coffin* and *Cubic Energy* advisory opinion cases cited by AMH are also inapposite. "In a bankruptcy context, the Third Circuit has determined that an opinion is not advisory where it actually invalidates a clause, orders a party to do something, or otherwise resolves the parties' litigation." *In re Cubic Energy,* 587 B.R. at 855; *In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 421-22 (3d Cir. 2013) (holding that, to the extent a bankruptcy opinion does "nothing to resolve whether ... courts would be required to abide by it, ... the opinion ha[s] no legal effect" and is "merely advisory," whereas an opinion that has some valid "legal effect" will not be advisory, even if the proceeding "sought to impact state proceedings.").

In *Coffin*, the motion before the court was not a request to interpret a confirmed Chapter 11 plan, but rather, a motion for reconsideration filed by a Chapter 13 debtor after the bankruptcy court denied a bank creditor's motion to lift the automatic stay so that it could pursue foreclosure. 90 F.3d at 853. The bankruptcy court denied the motion finding "no default under the Plan" but then further opined that the bank's lien "is not discharged by this Chapter 13 proceeding." *Id.* The bank did not appeal, but the debtor filed a motion for reconsideration challenging the court's finding that the bank's lien would survive the bankruptcy proceeding. The Third Circuit found that the "bankruptcy court's

26

'finding' – that the Bank's lien was not discharged and [that] at the end of the case … it would be free to exercise its state law remedies under its mortgage – was an advisory opinion" as the bank's right to foreclose would have to be determined by the state court in light of the confirmed plan "as well as the terms of the mortgage, applicable state law, and of course that court's findings of fact." *Id.* (emphasis added). As such, the Third Circuit held that "finding" in the bankruptcy court's order was *dictum* and had "no legal effect." *Id.* at 853-54.

In *In re Cubic Energy*, certain plan participants filed a motion seeking interpretation and enforcement of plan provisions regarding release, discharge and injunction relating to a state court judgment. 587 B.R. at 849. The court found, as was the case in *Coffin*, that "the parties' legal rights cannot be decided until the underlying factfinding has been done" and that the issue raised in the motion was not ripe or justiciable because the exception to the disputed releases under the plan "hinge[d] on the nature of the … factual and legal grounds surrounding [the claims that would be, but had not yet been, brought by the Trustee.]" *Id.* at 857.

Neither *Coffin* nor *Cubic Energy* are authoritative or instructive here, where (1) the issue of the scope of the Trustee's standing was ripe and justiciable: "The Trust filed . . . a lawsuit . . . [t]he parties dispute the scope of the authority the plan grants the … Trust to bring such litigation . . . [and] [u]nless and until any disputes [regarding Plan interpretation] are resolved, how is the Trust supposed to proceed in

27

district court?", (2) the Trustee's standing to bring the D&O claims derives solely from the Plan and does not "hinge" on any facts that another court is required to decide, (3) the Bankruptcy Court's order actually "does something" by vesting the Trustee with standing, and (4) the order has the "legal effect" of granting the Trustee authority to pursue such claims to the extent set forth in the order.

The Bankruptcy Court did not abuse its discretion in electing to exercise its undisputed jurisdiction to interpret the Plan that it confirmed.

## IV.   CONCLUSION

For the reasons stated above, I will affirm the Order in part and reverse the Order in part.  The Court will issue an Order consistent with this Opinion.